UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BARBARA McCLINTON,

        Plaintiff,

v.                                                          Case No. 1:11-cv-615
                                                            Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on July 17, 1960 (AR 180).[1]  She completed the 10th grade (AR 26).  She had previous employment as a laborer in a pickle plant, housekeeper, and as an activity worker in schools (AR 58-59, 244, 250).

Plaintiff alleged a disability onset date of August 15, 2004 (AR 180).  She identified her disabling conditions as:  depressive disorder, migraines, vision problems, mild mental retardation, sleeping problems, and mental illnesses (AR 243).  Plaintiff stated that she was unable to keep a steady job due to her mental illnesses and learning disabilities (AR 243).

---

[1] Citations to the administrative record will be referenced as (AR "page #").

The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on March 26, 2010 (AR 20-30). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim ultimately failed at the fourth step of the evaluation. The ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 15, 2004 and that she met the insured status requirements under the Act through December 31, 2008 (AR 22-23). Second, the ALJ found that plaintiff had severe impairments of mild mental retardation and cocaine dependence (AR 23). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 23). In this regard, the ALJ reviewed Listings 12.05 (mental retardation), 12.06 (anxiety related disorder) and 12.09 (substance addiction disorders) (AR 23-25). The ALJ decided at the fourth step that based on all of her impairments, including the substance abuse disorder, plaintiff had the residual functional capacity (RFC):

> to perform work limited to lifting up to 50 pounds frequently and 25 pounds occasionally; simple, routine tasks in a structured environment; maintain concentration for two hour blocks of time accommodated by normal breaks; no contact with the general public and occasional contact with co-workers and supervisors; no travel in unfamiliar places or use of public transportation; no requirement to read technical material, write reports, or perform mathematical calculations; and no requirement to maintain a consistent work week and a consistent pace while at work.

4

(AR 25).  Based upon this RFC, the ALJ found that plaintiff was unable to perform her past relevant work (AR 26).  The ALJ found at the fifth step that considering plaintiff's age, work experience and RFC, including the substance abuse disorder, there were no jobs that existed in significant numbers in the regional economy that she could perform (AR 26-27).

After making these findings, the ALJ determined that plaintiff's substance abuse was a contributing factor to her alleged disability pursuant to 20 C.F.R. §§ 404.1535 and 416.935 (AR 27).  The Social Security Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).  *See Siemon v. Commissioner of Social Security*, 72 Fed. Appx. 421, 422 (6th Cir. 2003) ("the social security administration must deny a claim for benefits if drug addiction or alcohol is a contributing factor material for a finding of disability").  The regulations provide that if the Commissioner finds that a claimant is disabled and has medical evidence of drug addiction or alcoholism, the regulations require the Commissioner to "determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. §§ 404.1535(a) and 416.935(a).  In making this determination, the regulations provide as follows:

(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

> (i) If we determine that your remaining limitations would not be
> disabling, we will find that your drug addiction or alcoholism is a
> contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you
> are disabled independent of your drug addiction or alcoholism and we
> will find that your drug addiction or alcoholism is not a contributing
> factor material to the determination of disability.

20 C.F.R. §§ 404.1535(b) and 416.935(b).

That did not end the five-step inquiry, however.  In applying 20 C.F.R. §§ 404.1535 and 416.935, the ALJ made additional findings at the second, third, fourth and fifth steps, to consider whether plaintiff would be disabled without the substance abuse.  At the second step, the ALJ found that if plaintiff stopped the substance use, the remaining limitation (mild mental retardation) would cause more than a minimal impact on her ability to perform basic work activities and she would continue to have a severe impairment or combination of impairments (AR 27).  At the third step, the ALJ found that if plaintiff stopped the substance abuse, she would not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 27-28).  The ALJ decided at the fourth step that if plaintiff stopped the substance abuse, she would have the RFC:

> to perform work limited to lifting up to 50 pounds frequently and 25 pounds
> occasionally; simple, routine tasks in a structured environment; maintain
> concentration for two hour blocks of time as accommodated by normal breaks; no
> contact with the general public and occasional contact with co-workers and
> supervisors; no travel in unfamiliar places or use of public transportation; and no
> requirement to read technical material, write reports, or perform mathematical
> calculations.

(AR 28).

Based on this RFC, the ALJ found that if plaintiff stopped the substance abuse, she would be able to perform her past relevant work as a pickle factory laborer (AR 29).  The ALJ noted

6

that "[t]his work does not require the performance of work-related activities precluded by the residual functional capacity the claimant would have if she stopped the substance use (20 CFR 404.1565 and 416.965)" (AR 29).   The ALJ further found that because plaintiff would not be disabled if she stopped the substance abuse, her substance use disorder (cocaine dependence) was a contributing factor material to the determination of disability pursuant to 20 C.F.R. §§ 404.1535 and 416.935 (AR 29).   Accordingly, the ALJ determined that plaintiff had not been under a disability, as defined in the Social Security Act at any time from the alleged onset date (August 15, 2004) through the date of the decision (March 26, 2010) (AR 29-30).

### III.  ANALYSIS

Plaintiff has raised six issues on appeal.

**A.     The ALJ committed reversible error in failing to find Plaintiff's impairments meet and/or equal the criteria of Listings 12.05B, 12.05C and 12.05D, contrary to 20 C.F.R. § 404.1526 and 20 C.F.R. § 404, Subpt. P, App. 1 and SSR 96-5p.**

**B.     The ALJ's findings that the plaintiff's IQ test scores all were invalid is not supported by substantial evidence.**

**1.     Plaintiff's claims**

Plaintiff contends that she met or equaled the requirements for three listings related to mental retardation, Listing 12.05B, C and D.  The ALJ found that plaintiff suffered from a severe impairment of mental retardation:

> The claimant has a history of poor-to-average grades in school, in a curriculum that reflects accommodation of her mental limitations (Exhibit 1F).  She did not complete school (testimony).  She has a history of a 20 year addiction to cocaine (Exhibit 3F/l).  In the meantime, her intellect was tested various times. In 2005, her scores were reflective of mental retardation, but the examiner questioned whether she gave her best effort (Exhibit 7F).  Similar results were achieved in 2007, though the examiner again questioned the level of effort (Exhibit 15F).  The conclusion was that while the results suggested moderate mental retardation, the

7

level was more likely mild (ibid, at 5). That conclusion was repeated by another examiner in 2008 (Exhibit 22F). This mental impairment significantly affects the claimant's ability to perform basic work activities.

(AR 23). However, the ALJ found that plaintiff did not meet any of the listed impairments related to mental retardation (AR 23-25).

### 2.     The listed impairments

A claimant bears the burden of demonstrating that she meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d) and 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d).

The listing for mental retardation, 12.05, provides as follows:

8

Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A.     Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

        Or

B.     A valid verbal, performance, or full scale IQ of 59 or less;

        Or

C.     A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

        Or

D.     A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

        1. Marked restriction of activities of daily living; or

        2. Marked difficulties in maintaining social functioning; or

        3. Marked difficulties in maintaining concentration, persistence, or pace; or

        4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05.

### 3.     The IQ scores relevant to Listings 12.05B and C

        Plaintiff does not dispute the ALJ's determination that she does not meet Listing

12.05A.  However, plaintiff contends that the ALJ erred with respect to Listings 12.05B and C by

9

finding that her IQ test scores invalid.  Plaintiff's IQ testing is summarized below.  On January 31, 2005, Dean Dorman, Ed.D., LP, administered the Slossen Intelligence Test - Revised to plaintiff (AR 352).  Plaintiff was homeless at the time, stated that she "has struggled with a crack cocaine habit for twenty years," that she lost custody of her children at one point in time, and has been in recovery for 90 days (AR 352).  Plaintiff's IQ at the time of testing was 40, which was lower than the evaluator suspected  (AR 352).  After some discussion, the evaluator determined that while plaintiff's pool of information from schooling was poor, she had "well developed 'street skills'" (AR 352).  Based on the test and observations, Dr. Dorman believed that plaintiff qualified as a developmentally disabled individual, having functioned most of her life in the mild range of developmental disability (AR 352).  The doctor noted that although plaintiff attended NA (narcotics anonymous) and AA (alcoholics anonymous) meetings, she might need a referral for outpatient substance abuse therapy (AR 352).

On August 8, 2005, Erin Campbell-Brooks, M.A., LLP, and William D. Brooks, Ed.D., LP, tested plaintiff using the Wechsler Adult Intelligence Scale (WAIS-III) (AR 376).  Plaintiff advised the evaluator that she abused crack cocaine (last use about one month previously) and drank beer (AR 376).  Plaintiff stated she worked for eight years at a packing plant but was fired in the summer of 2004 "due to an attitude and fighting with other co-workers" (AR 376).  Plaintiff was currently homeless and living in a women's drop-in clinic (AR 376).

Plaintiff's testing resulted in the following scores: verbal IQ of 52; performance IQ of 58; and full scale IQ of 51 (AR 379).  However, Ms. Campbell-Brooks concluded that plaintiff's scores did not accurately reflect her abilities:

> The client responded with short, very limited answers.  This evaluator needed to ask her to elaborate at which time the client would then respond more thoroughly.

She seemed to be irritated by the intellectual assessment and did not appear to be putting forth her best efforts. That is to say, she seemed to give up easily, frequently responding "I don't know."

During the Block Design subtest, she sat back in her chair after every design, with little to no interest in the test. She then asked, with a surly tone, "What is this suppose to be telling me?" The client sighed frequently and seemed bored or disinterested in the intellectual assessment. In fact, during the Coding subtest, she exclaimed, while she was suppose to be completing the symbols, "This is really boring." Given the client's lack of enthusiasm and lack of efforts, the following results do not seem to accurately represent her abilities.

(AR 376).

On August 23, 2007, Robert Griffith, Psy. D., evaluated plaintiff (AR 470-76). The doctor noted that plaintiff arrived 15 minutes late with her case manager (AR 470). When asked what kept her from working, plaintiff responded "I just can't read" (AR 470). Plaintiff indicated that she had a significant cocaine problem and had not engaged in treatment until two months earlier (AR 470).[2] Dr. Griffith administered a WAIS-III test (AR 473). Plaintiff had the following scores: verbal IQ of 53; performance IQ of 59; and full scale IQ of 52 (AR 473). Dr. Griffith noted that plaintiff's energy appeared low, that she understood and followed instructions, but also missed easy items (AR 473). Nevertheless, the doctor stated that her "[f]indings are slightly higher than her prior testing and are likely valid" (AR 473). The doctor believed that despite her low range measures of language competency and visual motor skills, plaintiff "is likely functioning somewhat higher in her street survival skills" and that "she likely falls into the Mildly Mentally impaired range" (AR 473-74).

_____

[2] The court notes inconsistent references regarding plaintiff's cocaine use: in January 2005 plaintiff stated that she had been in treatment for 90 days and attending NA and AA; in August 2005 plaintiff stated she last used cocaine about one month ago; and then, two years later, in August 2007, plaintiff's case manager stated that plaintiff "really did not engage in treatment until two months ago" (AR 470).

11

Several months later, on May 9, 2008, Ellie DeLeon, MA, LLP, administered plaintiff a Kaufman Brief Intelligence Test, Second Edition (AR 528).  Ms. DeLeon described the Kaufman test as brief, producing verbal and nonverbal standard scores, along with an IQ composite score (AR 528).  Plaintiff had the following scores: verbal IQ of 63; standard nonverbal of 48; and a composite IQ of 54 (AR 528).  All of plaintiff's scores were in the "Lower Extreme" category (AR 528).  Plaintiff scored an age equivalence of  9 years, 0 months in verbal functioning and 4 years, 10 months in nonverbal functioning (AR 528).  Ms. DeLeon summarized her evaluation as follows:

> According to intelligence testing and this examiner's impression, [plaintiff] is of below normal intellectual functioning for a woman her age.  During interview, it is clear to this examiner that [plaintiff] attempts to mask her significant intelligence deficit with avoidance and redirection.

(AR 528).  Ms. DeLeon recommended a diagnosis of mild mental retardation and to rule out moderate mental retardation (AR 528).

The ALJ found that plaintiff did not meet or equal the requirements of Listings 12.05B or C, because she lacked a valid IQ score:

> As for the "paragraph B" criteria of 12.05, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less.  Although the testing indicates scores in this range, on two occasions the tester observed that the claimant did not appear to use her best effort (Exhibits 7F; 15F).  On the third occasion, no observation regarding effort was made at all.  The general conclusion was not "moderate" mental retardation, but rather "mild" (ibid).

> Finally, the "paragraph C" criteria of 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  Even assuming that the testing confirms mild mental retardation, consistent with scores in this range, there is no indication of any other mental or physical impairment which imposes a significant, work-related limitation of function, as the physical symptoms are quite minimal and unsupported by objective evidence and the anxiety or depression is not reported to have any specific affect at all on functional limitations.

(AR 25).

As an initial matter, the ALJ's decision does not address any particular IQ score or test evaluator in concluding that the test scores were invalid and that plaintiff was only mildly mentally retarded.   However, none of the evaluators explicitly stated that the test results were "invalid."  At most, Ms. Campbell-Brooks and Dr. Brooks stated that plaintiff's "results do not seem to accurately represent her abilities."  The ALJ has given little guidance on why these tests were not valid for purposes of that listing, especially in light of the fact that one evaluator, Dr. Griffith, explicitly stated that plaintiff's verbal IQ score of 53, performance IQ score of 59 and full scale IQ score of 52 reach the opposite result and stated that the scores "are likely valid" (AR 473). The parties now urge the court to perform an in-depth analysis of the medical record, i.e., to interpret four IQ evaluations, based upon three different tests, where each evaluator found that plaintiff had at least one IQ score below 59 (not to mention one evaluator who felt that plaintiff functioned at the level of a four-year-old).  On its face, these IQ scores would meet the requirements of Listing 12.05B.

In his brief, the Commissioner goes to great lengths to explain the relevance of each test score and why plaintiff failed to meet the listings.   Defendant's Brief at pp. 3-9. The Commissioner's brief contains the type of explanation which the ALJ should have provided in his decision and seeks to have this court affirm the ALJ's decision with reasoning not asserted by the ALJ and evidence from outside of the record.  In short, defendant seeks to have this court perform a *de novo* review of plaintiff's claim.  However, it is not the function of this court to review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard*, 889 F.2d at 681.

While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely helpful for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985) (internal quotation marks omitted).

Accordingly, this matter shall be remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate each of plaintiff's IQ tests to determine whether plaintiff met the requirements of Listings 12.05B or C.

### 4. Listing 12.05D

Plaintiff also contends that she meets the requirements of Listing 12.05D.[3] The ALJ determined that plaintiff did not meet the requirements of this listing as follows:

> The claimant's mental impairments, including the substance use disorder, do not meet or medically equal the requirements of listings 12.05, 12.06, or 12.09. In making this finding, the undersigned has considered whether the "paragraph B" criteria ("paragraph D" criteria of 12.05) are satisfied. To satisfy the "paragraph B" criteria ("paragraph D" criteria of 12.05), the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

---

[3] The court notes that if the Commissioner determines on remand that plaintiff has a valid IQ score of 59 or less, then Listing 12.05D (which applies to individuals with valid IQ scores between 60 and 70) would be inapplicable.

In activities of daily living, the claimant has moderate restriction.  As noted, she is capable of self-care, though at times she neglects it.  In social functioning, the claimant has moderate difficulties.  She can be pleasant and cooperative (Exhibit 31F), but also avoids people when she chooses.  With regard to concentration, persistence or pace, the claimant has marked difficulties.  Her cocaine abuse has caused her to avoid treatment and prevented improvement in her situation (Exhibit 9F/11, 23).  As for episodes of decompensation, the claimant has experienced no episodes of decompensation.

Because the claimant's mental impairments, including the substance use disorder, do not cause "marked" limitation in at least two of the first three areas of functioning or "marked" limitation in one of these areas and "repeated" episodes of decompensation, the "paragraph B" criteria ("paragraph D" criteria of listing 12.05) are not satisfied.

(AR 24).

On September 4, 2007, the state agency psychologist, William Schirado, Ph.D., completed a Psychiatric Review Technique form (PRTF) based upon plaintiff's medical records which concluded that plaintiff did not meet the criteria of Listing 12.05D (AR 456-69).  Dr. Schirado found that plaintiff had only one marked limitation (difficulties in maintaining concentration, persistence or pace) (AR 466).  The doctor concluded that plaintiff had only moderate restrictions in her activities of daily living and moderate difficulties in maintaining social functioning, with no episodes of decompensation (AR 466).  Assuming that plaintiff had a valid IQ score between 60 and 70, the ALJ could rely on this evaluation performed by Dr. Schirrado.  An ALJ may rely on the opinions of the state agency physicians who reviewed plaintiff's file.  *See* 20 C.F.R. §§ 404.1527(e)(2)(i) and 416.927(e)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"); *Rice v. Barnhart*,  384 F.3d 363, 370 (7th Cir. 2004).  *See also  Jones v. Sullivan*, 954 F.2d 125, 129 (3rd Cir. 1991) (the opinion of a non-examining physician may constitute substantial

evidence to support the ALJ's decision).  Accordingly, the ALJ's determination that plaintiff failed to meet the requirements of Listing 12.05D is supported by substantial evidence.

> **C.    The ALJ's decision is not supported by substantial evidence because the ALJ did not consider plaintiff's depression, anxiety, foot problems or knee problems to be severe impairments, in violation of  SSR 96-3p.**

Plaintiff contends that the ALJ erred by failing to find additional severe impairments of foot pain, knee pain, depression and anxiety.  The fact that the ALJ did not find these additional conditions as severe impairments is not error requiring reversal.  A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).   Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987).  Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error.  *Id.*  An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity.  *Id.*  Here, the ALJ found that plaintiff suffered from severe impairments of mild mental retardation and cocaine dependence (AR 23).  He proceeded to review plaintiff's claim through step five of the sequential process.  The ALJ's failure to find plaintiff's foot pain, knee pain, depression and anxiety as severe impairments is not error requiring reversal.  *See Maziarz*, 837 F.2d at 244.

> **D.    The ALJ did not consider or give proper weight to the opinion of plaintiff's treating physician in violation of 20 C.F.R. § 404.1527(d)(2).**

16

Plaintiff contends that the ALJ failed to give proper weight to the opinions expressed by plaintiff's treating physician, Marguerite Saith, M.D. and PA Joy M. Wisser, in a document entitled "Medical opinion re: ability to do work-related activities (physical), dated February 8, 2010 (AR 641-42). Although defendant contends that there is no evidence that Dr. Saith had an on-going treatment relationship with plaintiff, the record reflects that the doctor provided treatment to plaintiff at the Family Health Center (AR 660). Specifically, Dr. Saith is identified as plaintiff's physician in a diagnostic report from Bronson Advanced Radiology Services dated November 18, 2009 (AR 660).

Dr. Saith's February 8, 2010 opinion states that plaintiff has various physical limitations which include: lifting no more that 20 pounds occasionally; lifting no more than 10 pounds frequently; standing and walking about 4 hours in an 8-hour workday; the need to use a sit/stand option at work; climbing stairs occasionally; and climbing ladders rarely (AR 641-42). The doctor identified plaintiff's underlying physical conditions as chronic hyperextension of bilateral knees (per examination) and bilateral foot deformity (per podiatrist records) (AR 641).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d

789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). If a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case," then the agency will give the opinion controlling weight. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d at 287. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ cited a number of health records (e.g., Exhibits 10F, 21F, 23F, 27F, 30F and 33F), but failed to address Dr. Saith's opinion (32F) or the clinic's records (34F) in this discussion (AR 25). While it is not necessary for the ALJ to review every piece of medical evidence, the ALJ

erred in this instance by failing to address the only opinion rendered by a treating physician with respect to plaintiff's physical condition.  This matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to review and assign weight to Dr. Saith's February 8, 2010 opinion.

### E.    The ALJ's failure to address plaintiff's receipt of State Disability Benefits is an error of law under 20 C.F.R. §§ 404.1504 and SSR 06-03p.

Plaintiff contends that the ALJ erred by failing to address the State of Michigan's award of disability benefits to her.  As an initial matter, the award of benefits from another governmental agency is not binding on the ALJ:

> A decision by any nongovernmental agency or other governmental agency about whether you are disabled or blind is based upon its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law.  Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504.  Nevertheless, "evidence of a disability decision by another governmental or non-governmental agency cannot be ignored and must be considered."  SSR 06-03p, 2006 WL 2329939 at *6 (Aug. 9, 2006). In this regard, "the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases."  *Id.* at *7.

Plaintiff had counsel.  In the pre-hearing statement, plaintiff's counsel advised the agency that plaintiff had received state disability assistance since February 2004 (AR 315).   In addition, plaintiff testified that she received state disability assistance but could not remember how long she received assistance (AR 44-45).  Other than these representations, however, there is no

documentation of plaintiff's state disability determination.  Given the lack of evidence, there were no state records for the ALJ to evaluate, and plaintiff's claim of error is without merit.

> ### F.    The ALJ's finding that plaintiff would have the RFC to perform her past relevant work is not based on substantial evidence under 20 C.F.R. § 404.1520a and SSR 98-6p.

Finally, plaintiff contends that the ALJ's determination that plaintiff would not be disabled if she stopped using cocaine was based on "pure conjecture."  Plaintiff's Brief at p. 18.  It is unnecessary for the court to address this claim because this is the ultimate issue to be determined on remand.  As discussed in § II, *supra*, the ALJ is required to perform an analysis under 20 C.F.R. §§ 404.1535 and 416.935 to determine whether a claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability.  The ALJ made an initial finding that plaintiff was disabled and had medical evidence of a substance abuse disorder (cocaine dependence) (AR 25-27).  Then, having identified a disabling substance abuse disorder, the ALJ concluded that this disorder was a contributing factor material to the determination of disability because plaintiff's "remaining limitations would not be disabling" under 20 C.F.R. §§  404.1535(b)(2)(i) and 416.935(b)(2)(i) (AR 27-30).  However, the ALJ's determination regarding the materiality of the substance abuse disorder is no longer relevant, because the court is remanding this matter to the Commissioner to re-evaluate whether plaintiff's remaining mental and physical limitations constituted independent grounds for a disability.  If the Commissioner makes this determination, then plaintiff will be found disabled under 20 C.F.R. §§  404.1535(b)(2)(ii) and 416.935(b)(2)(ii) ("[i]f we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability").  Accordingly, on remand, the

Commissioner is directed to re-evaluate whether plaintiff's substance abuse is a contributing factor material to the determination of disability.

## IV.  CONCLUSION

The ALJ's decision is not supported by substantial evidence.  Accordingly, the Commissioner's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.  On remand, the Commissioner is directed to re-evaluate each of plaintiff's IQ tests to determine whether plaintiff met the requirements of Listings 12.05B or C and to review and assign weight to Dr. Saith's February 8, 2010 opinion.  Further, the Commissioner is directed to re-evaluate whether plaintiff's substance abuse is a contributing factor material to the determination of disability.  A judgment consistent with this opinion shall be issued forthwith.


Dated:  September 24, 2012                    /s/ Hugh W. Brenneman, Jr.
                                              HUGH W. BRENNEMAN, JR.
                                              United States Magistrate Judge